IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ROMELE I. WALTON,

       Plaintiff,                      No. CIV S-05-2246 GEB EFB P

       vs.

SACRAMENTO COUNTY MAIN JAIL, et al.,

       Defendants.               FINDINGS AND RECOMMENDATIONS

       Plaintiff is a prisoner without counsel suing for alleged civil rights violations. *See* 42 U.S.C. § 1983. This action proceeds on plaintiff's November 7, 2005, complaint alleging that defendants violated his constitutional rights following his arrest. In particular, he alleges: (1) in July of 2004, defendants Mulherin and Husley assaulted plaintiff and broke his wrist; and (2) defendants Austin and Smith knew about plaintiff's broken wrist and other conditions but permitted them to go untreated. Plaintiff seeks damages and injunctive relief, and contends that in addition to the individual defendants, the County of Sacramento is subject to liability. Pending before the court are the parties' cross-motions for summary judgment. For the reasons explained below, the court finds that there is no genuine dispute over any material issue of fact and that the defendants' motion must be granted.

////

## I.     Municipal Liability

As a threshold matter, plaintiff's complaint fails to state a claim against the County of Sacramento. Section 1983 of Title 42 of the United States Code creates a cause of action against persons who deprive any individual of a right secured by the Constitution or laws of the United States while acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48-49 (1988). Municipalities and their officials are "persons" for purposes of section 1983. *Monell v. New York city Dep't of Social Servs.*, 436 U.S. 658, 690 (1978). A municipality is subject to liability for the constitutional torts of its officials if those individuals acted pursuant to an official policy or custom, or failed to act based on a policy of inaction amounting to the knowing disregard of plaintiff's rights. *Monell v. N.Y. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978); *Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir.1992). Similarly, the municipality is subject to liability for the constitutional torts of its officials if those individuals are themselves officials with final policy making authority. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986); *Oviatt*, 954 F.2d at 1477. To state a claim against the County, plaintiff must at a minimum allege that his rights were violated pursuant to a county policy or custom. *Karim-Panahi v. Los Angeles Police Dept.*, 839 F.2d 621, 623 (1988). It is useful at this point to quote plaintiff's allegations from the verified complaint:

> Mulherin 7/26/05 #127 Actually broke my wrist. Husley #825 participated in the assault. Lt. Bunce # 99, Sgt. Pederson And Sgt. Hanson condones maltreatment by not exhausting complaints on Administrative levels. Deputy Arragon Filed a Felony Complaint Against this plaintiff that was a False charge which was dismissed. Nurse Practitioner James Austin, Supervising Nurse T Smith and the Asian male doctor knows about my brutality and let it as well as other serious medical conditions go untreated. County Jail Sac. Co. Main Jail For Violation of Legal Mail and Person Mail Codes.

Compl., at 5, 7.[1]  Even construed liberally, the complaint fails to allege acts pursuant to a policy

---

[1] The magistrate judge who reviewed the complaint as required by 28 U.S.C. § 1915A found that plaintiff failed to state a claim against Bunce, Pederson, Hanson and Arragon. *See* Order filed July 28, 2006.

1 or custom. Accordingly, this claim must be dismissed for failure to state a claim upon which
2 relief could be granted.

3 **II.    Facts**

4      At all times relevant to this action, plaintiff was a pretrial detainee at the Sacramento
5 County Main Jail. Defendant Mulherin held the position of Deputy Sheriff at the Sacramento
6 County Mail Jail, and was assigned to the "eighth floor west," where the events occurred. Defs.'
7 Mot. for Summ. J., Decl. of Mulherin in Supp. Thereof ("Mulherin Decl."), at ¶¶ 1-3. Defendant
8 Nathan Husley held the position of Deputy Sheriff, and he worked in the Property Division of
9 the Sacramento County Main Jail. Defs.' Mot. for Summ. J., Decl. of Husley in Supp. Thereof
10 ("Husley Decl."), at ¶¶ 1, 3, 4. Defendant James Austin was a registered nurse whose job
11 responsibilities involved reviewing inmate medical records, making orders for the care of
12 patients, meeting with patients and assessing their medical needs. Defs.' Mot. for Summ. J.,
13 Decl. of Austin in Supp. Thereof ("Austin Decl."), at ¶2. Defendant Tricia Smith was a
14 registered nurse with supervisory responsibilities, primarily as the grievance coordinator at the
15 Sacramento County Main Jail. Defs.' Mot. for Summ. J., Decl. of Smith in Supp. Thereof
16 ("Smith Decl."), at ¶ 2.

17      Plaintiff was arrested in July 2004, and was housed at the Sacramento County Main Jail
18 until May 2005. Defs.' Mot. for Summ. J., Attach. 3, Decl. of Holtberg-Riehl, Ex. A Thereto,
19 Deposition of Plaintiff ("Pl.'s Dep."), at 10. On July 8, 2004, plaintiff was moved from his
20 initial housing assignment to a location known as, "eighth floor, west." Mulherin Decl., ¶ 4.
21 This section of the jail is reserved for inmates requiring protective housing, as determined by the
22 inmate's history of "incidents in the jail" or aggression towards deputies. *Id*., at ¶ 5. There is no
23 evidence of the particular reasons for this placement.

24      Mulherin has submitted a declaration stating that when plaintiff arrived in the protective
25 housing unit, plaintiff was agitated, and seemed to be unhappy about the move. *Id*., at ¶ 6.
26 ////

Mulherin asserts that plaintiff approached the control booth and attempted to get the attention of defendant Mulherin. *Id*., at ¶ 7. Mulherin told plaintiff to wait a moment, whereupon plaintiff became increasingly agitated and threw his property to the floor and laid down on it. *Id*., at ¶¶ 8-9. Mulherin called another deputy to the control booth so that he could respond to plaintiff's needs. *Id*., at ¶ 9. Mulherin ordered plaintiff to stand. *Id*., at ¶ 10. Plaintiff still seemed agitated, and his hands "were moving around in a quick manner." *Id*., at ¶ 11. Mulherin ordered plaintiff to put his hands down in front of him in accordance with the jail's policy on inmates who circulate about the facility. *Id*., at ¶¶ 11-12. Rather than obey, plaintiff "took an aggressive stance towards" Mulherin. *Id*., at ¶ 14. Mulherin responded by placing his hand on plaintiff's chest and guiding him two steps backwards towards the wall in order to gain control over the situation. *Id*., at ¶ 15.

       Defendant Hulsey was on the eighth floor at this time, and heard the disturbance. Hulsey Decl., at ¶¶ 5-6. As he approached, he saw that plaintiff was agitated and was yelling at Mulherin. *Id*., at ¶ 6. Hulsey was concerned for Mulherin's safety, and he and another deputy, Bartilson (who is not a defendant in this action) went to assist Mulherin. *Id*., at ¶¶ 7-9. Plaintiff became more agitated and continued to disobey orders. Mulherin Decl., at ¶ 17; Hulsey Decl., at ¶ 10. The officers decided to handcuff plaintiff. Mulherin Decl., at ¶ 17; Hulsey Decl., at ¶ 10. Hulsey states in his declaration that plaintiff resisted. Hulsey Decl., at ¶ 11. Mulherin states that plaintiff began jerking his arm back and forth. Mulherin Decl., at ¶ 18. According to Mulherin, this prompted Mulherin, Hulsey and Bartilson to "push[] Walton toward the ground until he went to the floor so that we would not lose control of him and risk the safety to ourselves and others." Mulherin Decl., at ¶ 19. Defendant Hulsey described this as taking plaintiff "to the ground in a controlled movement wherein we assisted him to the floor." Hulsey Decl., at ¶ 12. Once plaintiff was down, the officers handcuffed him without incident. Mulherin Decl., at ¶ 20; Hulsey Decl., at ¶ 13. In their declarations, Mulherin and Hulsey both assert, "[a]t no time did any officers hit, kick or strike Walton during this incident." Mulherin Decl., at ¶ 21; Hulsey

Decl., at ¶ 15.

Plaintiff testified in his deposition that when he arrived at the protective housing unit, he was told to sit down. Pl.'s Dep., at 14. He claims that he did so, but then was then told to stand with his property. *Id.* He said that he was tired, and he sat. *Id.* Mulherin then came from the control booth and, as plaintiff puts it, "started talking a bunch of crap basically and ended up roughing me up and calling some other guys to come, and that's when it happened pretty much." *Id.*

Following this incident, plaintiff complained of wrist pain. *Id.*, at 20. Within about two weeks of the incident, jail medical staff examined his wrist. *Id.* The first occasion was on August 16, 2005, when defendant Austin examined plaintiff. Austin Decl., at ¶ 5. The next day, plaintiff's left wrist was x-rayed. *Id.*, at ¶ 17. Medical staff prescribed pain medication and ordered x-rays of his wrist. Pl.'s Dep., at 31-32. According to the radiological report, the x-ray revealed no fracture to plaintiff's left wrist, or to his left hand or forearm. Austin Decl., at ¶ 8, Ex. A to Austin Decl.

On August 28, 2005, plaintiff returned to the medical clinic, where Austin reviewed the radiological report and explained the results to plaintiff. Austin Decl., ¶ 14; *see* Pl.'s Dep., at 21. Plaintiff continued to complain of pain in his left wrist. Austin Decl., at ¶ 15; Smith Decl., at ¶¶ 8, 12. He testified that when defendant Austin examined it, it "was all swollen and it was pretty jacked up." Pl.'s Dep., at 22. On September 2, 2005, Austin ordered a wrist brace for plaintiff. Austin Decl., at ¶ 15. Defendant Smith is a supervisor for the Sacramento County Main Jail medical clinic, but she does not supervise defendant Austin. Smith Decl., at ¶¶ 2-3. Smith herself did not treat plaintiff for his wrist injury. *Id.* Instead, she came into contact with plaintiff on the question of the treatment of his wrist because as a supervisor, she acts as the grievance coordinator. *Id.*, at ¶¶ 2,4. Thus, she responded to plaintiff's grievances about the treatment of his wrist. *Id.*, at ¶¶ 6-13. She explained that the x-rays were negative for fractures and that ordering a wrist brace, as had been done for plaintiff, was a common treatment for the

5

kind of complaint plaintiff had about his wrist. *Id.* At his deposition, plaintiff testified that he still suffered wrist pain and it was difficult for him to perform simple tasks, such as brushing his hair. Pl.'s Dep., at 24.

**III.     Standards on Summary Judgment**

Summary judgment pursuant to Fed. R. Civ. P. 56(a) avoids unnecessary trials in cases with no disputed material facts. *See Northwest Motorcycle Ass'n v. United States Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). At issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Rule 56 serves to screen the latter cases from those which actually require resolution of genuine disputes over facts material to the outcome of the case; e.g., issues that can only be determined through presentation of testimony and evidence at trial such as credibility determinations of conflicting testimony over dispositive facts.

> In three recent cases, the Supreme Court, by clarifying what the non-moving party must do to withstand a motion for summary judgment, has increased the utility of summary judgment. First, the Court has made clear that if the non-moving party will bear the burden of proof at trial as to an element essential to its case, and that party fails to make a showing sufficient to establish a genuine dispute of fact with respect to the existence of that element, then summary judgment is appropriate. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Second, to withstand a motion for summary judgment, the non-moving party must show that there are "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242 (1986) (emphasis added). Finally, if the factual context makes the non-moving party's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). No longer can it be argued that *any disagreement* about a material issue of fact precludes the use of summary judgment.

*California Arch. Bldg. Prod. v. Franciscan Ceramics*, 818 F.2d 1466, 1468 (9th Cir.), *cert.*

*denied*, 484 U.S. 1006 (1988) (parallel citations omitted) (emphasis added).  In short, there is no "genuine issue as to material fact," if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Grimes v. City and Country of San Francisco*, 951 F.2d 236, 239 (9th Cir. 1991) (quoting *Celotex*, 477 U.S. at 322).

Thus, to overcome summary judgement an opposing party must show a dispute that is both genuine, and involving a fact that makes a difference in the outcome.[2]  Two steps are necessary.  First, according to the substantive law, the court must determine what facts are material.  Second, in light of the appropriate standard of proof, the court must determine whether material factual disputes require resolution at trial.  *Id.,* at 248.

When the opposing party has the burden of proof on a dispositive issue at trial, the moving party need not produce evidence which negates the opponent's claim.  *See e.g., Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 885 (1990).  The moving party need only point to matters which demonstrate the absence of a genuine material factual issue.  *See Celotex v. Cattret*, 477 U.S. 317, 323-24 (1986).

If the moving party meets its burden, the burden shifts to the opposing party to establish genuine material factual issues.  *See Matsushita Elec. Indus. Co.*, 475 U.S. at 586.[3]  The opposing party must demonstrate that disputed facts are material, i.e., facts that might affect the outcome of the suit under the governing law, *see Anderson*, 477 U.S. at 248; *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and that disputes are genuine, i.e., the

---

[2] On November 16, 2006, the court informed plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  *See Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), *cert. denied*, 527 U.S. 1035 (1999), and *Klingele v. Eikenberry*, 849 F.2d 409, 411-12 (9th Cir. 1988).

[3] The nonmoving party with the burden of proof "must establish each element of his claim with significant probative evidence tending to support the complaint." *Barnett v. Centoni*, 31 F.3d 813, 815 (9th Cir. 1994) (internal quotations omitted).  A complete failure of proof on an essential element of the nonmoving party's case renders all other facts immaterial, and entitles the moving party to summary judgment.  *Celotex*, 477 U.S. at 322.

7

parties' differing versions of the truth require resolution at trial, *see T.W. Elec.*, 809 F.2d at 631. The opposing party may not rest upon the pleadings' mere allegations or denials, but must present evidence of specific disputed facts. *See Anderson*, 477 U.S. at 248.[4] Conclusory statements cannot defeat a properly supported summary judgment motion. *See Scott v. Rosenberg*, 702 F.2d 1263, 1271-72 (9th Cir. 1983).

The court does not determine witness credibility. It believes the opposing party's evidence, and draws inferences most favorably for the opposing party. *See Anderson*, 477 U.S. at 249, 255. Inferences, however, are not drawn out of "thin air," and the proponent must adduce evidence of a factual predicate from which to draw inferences. *American Int'l Group, Inc. v. American Int'l Bank*, 926 F.2d 829, 836 (9th Cir.1991) (Kozinski, J., dissenting) (citing *Celotex*, 477 U.S. at 322).

If reasonable minds could differ on material facts at issue, summary judgment is inappropriate. *See Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995). On the other hand, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted). In that case, the court must grant summary judgment.

With these standards in mind, it is important to note that plaintiff bears the burden of proof at trial over the issue raised on this motion, i.e., whether the defendant acted with deliberate indifference to the plaintiff's safety. Equally critical is that "deliberate indifference" is an essential element of plaintiff's cause of action. Therefore, to withstand defendant's motion, plaintiff may not rest on the mere allegations or denials of his pleadings. He must demonstrate a genuine issue for trial, *Valandingham v. Bojorquez*, 866 F.2d 1135, 1142 (9th Cir. 1989), and he must do so with evidence upon which a fair-minded jury "could return a verdict for [him] on the

---

[4] A verified complaint may be used as an affidavit in opposition to the motion. *Schroeder v McDonald*, 55 F. 3d 454, 460 (9th Cir. 1995); *McElyea v. Babbitt*, 833 F.2d 196, 197-98 (9th Cir. 1987) (per curiam).

8

evidence presented." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248, 252.

"As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248. As explained below, plaintiff's action arises under 42 U.S.C. Section 1983 and the Fourth and Fourteenth Amendments. To prevail at trial, he must prove that the defendant deprived him of his Fourth and Fourteenth Amendment rights while acting under color of state law. To prove a Fourth Amendment violation, plaintiff must show by a preponderance of competent evidence that the force used was not "objectively reasonable under the circumstances." *Graham v. Connor*, 490 U.S. 386, 397 (1989). To prove a violation of his right to due process under the Fourteenth Amendment, plaintiff must show defendants were deliberately indifferent to his serious medical needs. *Gibson v. County of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002). As discussed below, plaintiff has failed to establish a genuine dispute for trial over these material issues.

**IV. Analysis**

Plaintiff claims that defendants the Mulherin and Husley violated the Fourth Amendment by using excessive force against him, resulting in a broken wrist. He also claims that defendants Austin and Smith knew about plaintiff's broken wrist and other conditions but permitted them to go untreated, in violation of the Due Process Clause of the Fourteenth Amendment. The individual defendants contend that there is no genuine issue about whether they violated plaintiff's constitutional rights.

**A. Excessive Force**

Defendants Mulherin and Hulsey contend that plaintiff cannot submit evidence showing a genuine issue about whether the force they used was unreasonable under the circumstances. The Fourth Amendment governs a claim that defendants used excessive force immediately following an arrest. *Graham v. Connor*, 490 U.S. 386, 394 (1989); *Forrester v. City of San Diego*, 25 F.3d 804, 806 (9th Cir. 1994). The inquiry focuses on whether the amount of force used was

9

1 "objectively reasonable under the circumstances." *Graham*, 490 U.S. at 397; *Jackson v. City of*
2 *Bremerton*, 268 F.3d 646, 651 (9th Cir. 2001) (finding it reasonable that one officer sprayed
3 plaintiff's hair with chemical irritant and that she roughly was handcuffed when plaintiff's
4 interference with lawful arrest of her adult son posed immediate threat to officer's personal safety
5 and ability to control crowd of 30 to 50 people). In considering "reasonableness," the court bears
6 in mind "the fact that [law enforcement] officers are often forced to make split-second judgments-
7 in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is
8 necessary in a particular situation. *Graham*, 490 U.S. at 396-97. This "requires careful balancing
9 of the nature and quality of the intrusion on the individual's Fourth Amendment interests against
10 the countervailing governmental interests at stake." *See Id.*, at 396.  Th court must pay "careful
11 attention to the facts and circumstances in each particular case, including the severity of the crime
12 at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and
13 whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.*  In assessing the
14 nature and quality of the intrusion, the court must consider "the type and amount of force
15 inflicted." *Jackson*, 268 F.3d at 651; *Chew v. Gates*, 27 F.3d 1432, 1440 (9th Cir. 1994).  While
16 the necessity of using force is the crux of the *Graham* inquiry, *Alexander v. City & County of San*
17 *Francisco*, 29 F.3d 1355, 1367 (9th Cir. 1994), even where some force is justified, the amount
18 actually used may be excessive. *P.B. v. Koch*, 96 F.3d 1298, 1303-04 (9th Cir.1996).

19     Here, it is undisputed that at the time of the events giving rise to this action, plaintiff was
20 an inmate in the Sacramento County Jail.  Thus, his interest in being free from the use of force is
21 not as great as if he were wholly at liberty.  The jail clearly has an interest in maintaining order
22 and security. *Bell v. Wolfish*, 441 U.S. 520, 545-48 (1979).  It is also undisputed that there was
23 some form of order given to plaintiff and that he did not comply.  Moreover, defendant Mulherin
24 has submitted evidence that plaintiff was "agitated," although there is no evidence of plaintiff's
25 particular conduct in this regard.  Plaintiff obeyed Mulherin's command to stand, but remained
26 "agitated," refused to "bury" his hands, and took an "aggressive" stance.  Husley has submitted

1   evidence that while he was also on the eighth floor, he heard a disturbance and decided to assist
2   Mulherin. He also describes plaintiff as having been "agitated," and states that plaintiff was
3   yelling at Mulherin. Thus, Hulsey became concerned that plaintiff could become violent.
4   Mulherin and Hulsey decided to handcuff plaintiff, but plaintiff resisted by jerking his arms back
5   and forth. In his declaration, Mulherin states that he placed his hand on plaintiff's chest and
6   pushed him two steps back toward the wall, whereupon plaintiff jerked one arm around and tried
7   to pull it away to avoid being restrained. Thus, they maneuvered plaintiff to the ground and
8   handcuffed him. Both defendants deny kicking, hitting or striking plaintiff. They have submitted
9   a radiological report showing that his wrist was not broken.

10   This is the point at which plaintiff's burden becomes crucial. Plaintiff has not submitted
11   any evidence that he was taken down with such force as to cause injury. He submits no evidence
12   that defendants kicked or hit him. Plaintiff denies that he was agitated and denies that he resisted
13   defendants, but does not provide any evidence about his demeanor or behavior. He merely asserts
14   that he was tired and so he laid down on his belongings. He does not deny yelling at Mulherin.
15   He also alleges that Mulherin called others to assist him, which Mulherin does not dispute.
16   However, calling for assistance, alone, is not sufficient to demonstrate he was calling for the
17   purpose of brutalizing plaintiff. To the contrary, is tends to support the assertion that plaintiff
18   was resistant and uncooperative.

19   Taking the evidence in the light most favorable to plaintiff, the court finds that regardless
20   of whether plaintiff was "agitated," he yelled at Mulherin and resisted efforts to handcuff him.
21   Thus, Mulherin and Hulsey forced him to the ground and handcuffed him. No doubt this was not
22   a comfortable process and involved some use of force. However, even for pretrial detainees, jail
23   is not necessarily comfortable and circumstances often warrant the use of some force. The court
24   notes that whether the use of force is reasonable frequently is a jury question. But summary
25   judgment must be entered if, having resolved all factual disputes in favor of the plaintiff, the court
26   determines that the officer's force was "objectively reasonable" under the circumstances. *See*

*Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994); *see also Liston v. County of Riverside*, 120 F.3d 965, 976 & n. 10 (9th cir. 1997).  The evidence currently in the record, even in the light most favorable to plaintiff, shows that the force used here was reasonable.  Plaintiff has the burden of demonstrating a genuine issue about reasonableness.  He has not produced evidence upon which it can be determined the force applied here was unreasonable.  Accordingly, he has not satisfied his burden and defendants Mulherin and Hulsey are entitled to judgment as a matter of law.

**B. Medical Treatment**

Plaintiff claims that Austin and Smith knew his wrist was broken, but failed to provide adequate treatment.  Defendants Smith and Austin contend that plaintiff cannot submit evidence to establish a genuine issue about whether they provided adequate medical care.

A pretrial detainee claiming inadequate medical treatment must proceed under the Due Process Clause of the Fourteenth Amendment.[5]  *Oregon Advocacy Ctr. v. Mink*, 322 F.3d 1101, 1120 (9th Cir. 2003).   The Ninth Circuit has held that "the due process clause imposes, at a minimum, the same duty the Eighth Amendment imposes: persons in custody ha[ve] the established right not to have officials remain deliberately indifferent to their serious medical needs."  *Gibson v. County of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002); *see also Frost v. Agnos*, 152 F.3d 1124, 1128, 1130 (9th Cir. 1998) .  Thus, the question is whether there is a genuine dispute about whether defendants engaged in "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  A prison official is deliberately indifferent when he knows of and disregards a risk of injury or harm that "is not one that today's society chooses to tolerate."  *See Helling v. McKinney*, 509 U.S. 25, 35 (1993); *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  The official must "be aware of the facts from which the inference could be drawn that a substantial risk of serious harm

---

[5] Before a person is convicted of a crime, he cannot be subjected to punishment.  *See Bell v. Wolfish*, 441 U.S. 520, 1173-74 (1979).  Thus, the Eighth Amendment's prohibition of "cruel and unusual punishments" applies after judgment of conviction is entered.  *Graham v. Connor*, 490 U.S. 386, 393 & n.6 (1989).

12

exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.  Deliberate indifference "may be manifested in two ways. It may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988).  Here, it is undisputed that plaintiff complained of wrist pain after the incident with Mulherin and Hulsey. However, medical staff examined plaintiff's wrist on August 16, 2005, the day after the incident. Plaintiff received pain medications and x-rays of his wrist were ordered.  The x-rays were taken the day after this examination.  Defendants Smith and Austin have submitted a radiological report stating that the resulting images showed no fractures or breaks.  In fact, insofar as it could be discerned, plaintiff's soft tissues in his wrist appeared to be normal.  On August 28, 2005, Austin met with plaintiff and explained this to him.

Plaintiff disputes this report, asserting that defendants falsified the report and he was not allowed to see the x-rays.[6]  If plaintiff could support this allegation, he certainly could defeat defendants' motion.  But he does not submit any evidence whatsoever in support of this allegation.  The court must reject conclusory assertions and "satisfy itself that there is sufficient 'direct or circumstantial evidence' [to establish the material fact in question] to create a genuine issue of fact for the jury, before it can deny summary judgment . . . ." *Lindsey v. Shalmy*, 29 F.3d 1382, 1385 (9th Cir. 1994).  On the evidence before the court, it cannot be said that a reasonable jury could find in plaintiff's favor.[7]  Therefore, defendants Smith and Austin are entitled to judgment as a matter of law.

////

---

[6] The court notes that plaintiff has not filed a motion to compel production of the x-rays. Accordingly, there is no basis for construing this assertion as a request pursuant to Rule 56(f).

[7] The court notes that plaintiff also complains that he was given a brace for his wrist in September 2005, and that this is insufficient for a broken wrist. In September of 2005, Austin ordered a brace for plaintiff's wrist in response to continued complaints of pain. Whether this treatment was appropriate for an allegedly broken wrist is immaterial because the evidence shows that plaintiff's wrist was not broken.

13

Accordingly, it is hereby RECOMMENDED that:

1. Defendants' April 13, 2007, motion for summary judgment be granted;

2. Plaintiff's June 18, 2007, cross-motion for summary judgment be denied;

3. Judgment be entered in favor of defendants Mulherin, Hulsey, Austin and Smith; and

4. The Clerk of the Court be directed to close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated: February 13, 2008.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE